**SOO LINE RAILROAD COMPANY,**
Plaintiff and Respondent,

v.

**CITY OF WILTON, and Otto Vetter as Auditor of McLean County, North Dakota,**
Defendants and Appellants.

**Civ. No. 8547.**

Supreme Court of North Dakota.

Nov. 3, 1969.

Rehearing Denied Nov. 26, 1969.

Zuger, Bucklin, Kelsch & Zuger, Bismarck, for defendants and appellants.

Pearce, Engebretson, Anderson & Schmidt, Bismarck, for plaintiff and respondent.

PAULSON, Judge.

This is an appeal from a judgment entered for the Soo Line Railroad Company (hereinafter Railroad) by the District Court of McLean County, Clifford Jansonius, J., presiding. The City of Wilton (hereinafter City) has demanded a trial de novo in this court, pursuant to § 28–27–32 of the North Dakota Century Code.

The facts are as follows: The governing body of the City of Wilton determined that a number of its streets should be paved and should have curbs and gutters installed. To facilitate this improvement, the city governing board created Street Improvement District 65–2 and resolved that the improvements were necessary and made the proper publication. Mr. Vernon K. Boe, the Railroad's tax commissioner, filed

a written protest in its behalf, dated July 12, 1965. A resolution was adopted on August 2, 1965, under the provisions of § 40–22–18, N.D.C.C., finding the protest insufficient. Plans and specifications were drawn and contracts were entered into for a total cost of $425,901.59. The Wilton city auditor, on December 19, 1966, certified the total cost of the project to the Wilton special assessment commission, with the direction that the commission spread assessments to pay the cost. The assessment commission viewed the properties within the improvement district and compiled an assessment list. A hearing for those objecting to the assessment list was scheduled for January 19, 1967, after which some changes were made in assessments and the assessment list was then confirmed on January 23, 1967. The parties stipulated that the Wilton city auditor had stated he would notify the Railroad when the hearing was to be held, but he failed to do so. The Railroad did not appear at the January 19, 1967, hearing before the assessment commission. The city governing body, on February 20, 1967, sitting in review, received a notice of protest from the Railroad's attorney, but, after the hearing on the protest, the Railroad was denied any relief.

The Railroad's attorney caused a summons and complaint, dated June 19, 1967, to be served on the City and on McLean County Auditor Otto Vetter, and alleged in the complaint that the Railroad was a property owner in Wilton; that the City had formed a street improvement district to defray the total cost of the street improvements; that the City had assessed the Railroad's property

"in an arbitrary, capricious, discriminatory, unjust and inequitable manner",

thus arriving at a figure of $21,685.18,

"whereas it should be in an amount not to exceed $9,510.00 on the basis of benefit to the property";

that the Railroad had filed a timely notice of protest with the special assessment commission and an appeal from the assessment commission to the city governing body, pursuant to Chapter 40–23, North Dakota Century Code, but that such relief was denied; and that the Railroad asked the court to review and correct the assessment. The City filed an answer dated July 27, 1967, wherein it alleged that the complaint failed to state a claim for relief and, additionally, stated that the Railroad did not object to the assessment before the special assessment commission and therefore there was nothing for the city governing body to review. Further, the City claims that the Railroad admitted and accepted the benefits and, since it did not object, it waived any claim that the assessment was invalid; and that the suit was not timely commenced.

An amended complaint was served on July 24, 1967, wherein the Railroad claimed that the assessment made was

"arbitrary, capricious, discriminatory and inequitable"

so as to constitute constructive fraud, and in a manner violative of Sections 1, 13, 20, and 22 of the North Dakota Constitution and of the Fourteenth Amendment of the Constitution of the United States. The amended complaint also stated that the Railroad received no benefit from the improvements and therefore its property should not be assessed in any amount.

The City's amended answer, dated August 30, 1967, includes the allegation that the Railroad failed to exhaust its administrative remedies, and requests that the complaint be dismissed.

A trial on the merits was then held before the court and the court found that the assessment commission, in making the assessment, and the city governing body, in confirming it, had acted arbitrarily, because the Railroad had not received a special benefit in addition to the general benefit enjoyed by the entire City. The trial court remanded the case to the City of Wilton and ordered the governing body of the City to revise its assessment with regard to the Railroad's property. It is from this decision that the City appeals.

Although the Railroad and the City state the issues differently, they are basically these:

1. Is the Railroad estopped from seeking relief in the courts because of its failure to appear before the special assessment commission?

2. Was the assessment against the Railroad unjustly and improperly imposed and thus invalid?

The Railroad and the City stipulated, at the commencement of the trial, that all of the statutory requirements providing for the formation of the street improvement district had been complied with; that the proper resolutions and publications had been made; that plans and specifications were ordered, bids were let, and the contract work was completed at a cost of $425,-901.59; and that the special assessment commission spread the cost over the various properties located in the improvement district within the City of Wilton.

▆▆▆ The City contends that the Railroad is not entitled to have its assessment reviewed by the courts because it did not appear before the special assessment commission and thus did not exhaust its administrative remedies. The City relies on Hale v. City of Minot, 52 N.D. 39, 201 N.W. 848 (1924), as authority for its position.

The record indicates that the Railroad did not appear or file any objection either before or at the hearing, held on January 19, 1967, of the special assessment commission. The record further indicates that the Railroad appeared by its attorney, on February 20, 1967, before the city governing body, sitting in review of the determinations made by the special assessment commission. At this hearing, the Railroad filed a protest and also filed an appeal from the determination of the assessment commission.

It was further stipulated that the Wilton city auditor had stated that he would notify the Railroad when the hearing before the special assessment commission was scheduled, but that he had failed to do so. It was also stipulated by both parties that the necessary notices regarding the hearing had been published in the proper newspaper.

The City urges that the failure of the Railroad to appear before the special assessment commission estops it from seeking relief from the courts. The Railroad contends that it should not be estopped to take further action before the city governing body or the courts by reason of the Railroad's failure to appear before the special assessment commission. The Railroad further contends that notice by publication alone of the special assessment commission hearing would violate the due process clause of the Constitution of the United States.

The language of the statutes shows that the Railroad is not estopped to take further action before the governing body of the City, even though it did not appear before the special assessment commission. Section 40–23–14, N.D.C.C., states that:

"* * * *any aggrieved person* may appeal from the action of the special assessment commission * * *." [Emphasis added.];

and Section 40–23–15, N.D.C.C., states that:

"* * * *any person aggrieved* by the determination of the special assessment commission * * * who has appealed * * * as provided in section 40–23–14 may appear before the governing body and present his reasons why the action of the commission should not be confirmed. * * *" [Emphasis added.]

There is nothing in the statutes which provides that an appearance before a special assessment commission is a condition precedent to an appeal to the city governing body. The wording of §§ 40–23–14 and 40–23–15, N.D.C.C., states that "any aggrieved person" or "any person aggrieved" may appeal. We therefore find that the Railroad was not estopped to ap-

peal to the governing body of the City, and it follows that the Railroad was not estopped to appeal to the courts from the determination made by the governing body of the City. Having decided that the Railroad was not estopped to appeal, it is not necessary to determine whether the statutory provision requiring constructive notice violates the due process clause of the United States Constitution, as contended by the Railroad.

The second issue is whether the assessment against the Railroad was unjustly and improperly imposed and thus invalid.

It is necessary to note that the appeal in this action is made pursuant to our de novo statute, § 28–27–32, N.D.C.C., which requires that the case be tried anew; and this appeal is not made pursuant to § 28–32–19, N.D.C.C., which is part of the Administrative Agencies Practice Act. The importance of this distinction is that, under § 28–27–32, N.D.C.C., this court must try the entire case anew [Matteson v. Polanchek, 164 N.W.2d 54 (N.D.1969)]; whereas the scope of review under § 28–32–19, N.D.C.C., is restricted to the record which was made and certified by the administrative agency. Petition of Village Board of Wheatland, 77 N.D. 194, 42 N.W.2d 321 (1950). See In re Guon, 76 N.D. 589, 38 N.W.2d 280 (1949).

In Chapter 230 of the 1919 Session Laws, the Legislature established that:

"* * * the courts shall review the levy and apportionment of such special assessments."

This power of review by the court is included in § 40–26–01 of our present Code. In Foss Methodist Church v. City of Wahpeton, 157 N.W.2d 347 (N.D.1968), our court concluded that prior to the enactment of Chapter 230 of the 1919 Session Laws, this court had repeatedly refused to review the determinations of special assessment commissions as confirmed by their governing bodies unless equitable grounds

had existed and that the purpose for which the Legislature enacted Chapter 230 was to require that the courts review the levy and apportionment of special assessments. The court in this case held that the scope of the court's review was accordingly broadened. In the instant case a constitutional question is raised which was not raised in *Foss*.

The Legislature has enacted specific legislation under which a municipality may establish a special assessment commission. § 40–23–01, N.D.C.C. The special assessment commission has the power to make assessments in accordance with the law, at any time after the contract and bond for work for which a special assessment is required has been executed and approved by the governing body. § 40–23–05, N.D.C.C. The special assessment commission must publish a special assessment list and notice of a hearing at which time objection can be made to any special assessment. § 40–23–10, N.D.C.C. An aggrieved party may appeal to the governing body from the determination of the special assessment commission. Murphy v. City of Bismarck, 109 N.W.2d 635 (N.D.1961); §§ 40–23–14, 40–23–15, N.D.C.C. It is obvious from these sections that the Legislature delegated to the special assessment commission the power and authority to fix and determine not only the benefits but the amount of the assessment each property owner should be required to pay.

Although a trial de novo has been demanded, because of the constitutional question now presented, our review is limited. City of Carrington v. Foster County, 166 N.W.2d 377 (N.D.1969); Cass County Electric Cooperative v. Otter Tail Power Company, 169 N.W.2d 415 (N.D. 1969); and Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104 (N.D.1969). If we were to do otherwise, we would be violating the constitutional provision of separation of powers as set forth in Carrington v. Foster County, *supra*.

This court said, in Hale v. City of Minot, 52 N.D. 39, 201 N.W. 848, 849 (1924):

"A 'special assessment commission' is a tribunal created by legislative authority for the purpose of determining the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and assessing the costs and expenses thereof. * * * if the assessment as certified is confirmed, the finding of the commission as to what property is benefited and the amount of such benefits is final, and will not be disturbed * * * in the absence of fraud or other grounds for equitable relief."

█ In Reed v. City of Langdon, 78 N.D. 991, 54 N.W.2d 148, 150 (1952), this court stated in ¶ 4 of the syllabus:

"Generally, all presumptions are in favor of the validity of assessments for local improvements and the burden is on persons attacking the validity of assessments to show that they are invalid."

██ The trial court concluded that the Railroad carried this burden; however, in a trial de novo on appeal to the Supreme Court, it is necessary for this court to analyze the record independently, to determine whether the decision of the trial court was in error. In making this decision, this court is bound by the rule that when there is substantial evidence to support the decision of the special assessment commission, which is shown not to be invalid as a result of fraud or mistake, or by some defect in the proceeding which would render the special assessment invalid, the decision of the special assessment commission as confirmed by the city governing body must be affirmed. See Williams Electric Co-op., Inc. v. Montana-Dakota Util. Co., 79 N.W. 2d 508 (N.D.1956); 63 C.J.S. Municipal Corporations § 1483, pp. 1274–1275; 63 C.J.S. (P.P.) Municipal Corporations § 1490, n. 57.

The Railroad called Mr. E. D. McGinnis, the chairman of the special assessment commission, as an adverse witness. The pertinent testimony given by Mr. McGinnis was as follows: The members of the special assessment commission made several inspection trips throughout the City of Wilton; several methods of spreading the cost of the improvements were discussed; and the commission determined that it would use the front-footage method, and the sum of $15.85 per front foot would be applied. The commission did not make an independent determination of the present or potential use of the various parcels of property involved. Various adjustments were made in the assessment of odd-shaped lots, such as those in a triangular shape, in which cases the commission measured the front and the rear of the lots, added the distances together, and then divided the total distance by two in order to arrive at an average front-footage. The commission did not determine benefits on an area basis for any of the lots. Generally the property was assessed on the basis of its frontage on east-west streets; however, the Railroad and the Washburn Estate property were assessed on the basis of their frontages on north-south streets.

The Railroad called Mr. George T. Bergren, director of real estate for the Railroad, and he testified as follows: The Railroad had only one lessee within the assessment district, namely, the City of Wilton, and such lessee paid the Railroad the nominal sum of $1 a year for its lease. Mr. Bergren testified that State law requires that nothing be built within 8½ feet from the centerline of the track; and that the company policy of the Railroad reserves 40½ feet from the centerline of its track, which would leave only a 59½-foot area of usable lot depth. In Bergren's opinion, there is no opportunity for commercial development upon the Railroad's property in Wilton; and, additionally, there was no direct benefit to the Railroad's property, since it would have no use other than as a parking lot and a city park, which is what it was used for prior to the improvement. Bergren testified, on cross-examination, that the depot,

the loading platform, and the spur track, all located within the assessment district, were being used for commercial purposes by the Railroad. He further testified that the Railroad divided its property into lots facing Railway Street and that these plats were solely for company usage and were not officially recorded. He testified, on cross-examination, that, in his opinion, the Railroad derived no benefit from the improvements because the property is inadequate in depth for commercial development and that it has no use other than as a parking lot or a park. He admitted that, technically, the only unusable portion of the lots would be the 8½ feet from the center-line of the railroad track required by statute. He also testified that Railway Street was of substandard width for commercial purposes, but he admitted that there would be no need for a wider street.

Mr. Boe, the Railroad's tax commissioner, testified that, in his opinion, the Railroad property was not benefited in any manner by the improvements. Boe stated, on cross-examination, that he participated in determining the compromise amount of $9,510.00 referred to in the original complaint. He explained that this amount was arrived at by adding the distances that County Road and Dakota Avenue abutted on the Railroad's property; by projecting several other fictitious city streets through the Railroad's property and arriving at a total frontage of 600 feet; and by multiplying this 600-foot frontage by the $15.85 per-front-foot rate, which resulted in the aggregate figure of $9,510.00.

Mr. Edward Roehrich, the Railroad's agent at Wilton, testified that the shipment of goods via rail had been steadily decreasing in volume.

Mr. H. A. Swenson, a real estate appraiser retained by the Railroad, testified there were no zoning or building restrictions in the City of Wilton. He also testified that the Railroad received no benefit from the improvements and he stated that he arrived at this conclusion by determining the value of the property before and after the improvements, and determined that the income from the property would not be increased. Swenson further testified that there are four methods of determining benefits; namely, the market value or comparable sales method, the cost approach, the income approach, and the common-sense approach, which is the method which he employed in this case. He stated that in his determination he used a depth of 75 feet and that he knew nothing of the fact that a distance of only 8½ feet from the center-line of the track was required by statute to be left open. He admitted that curbing, gutters, and pavement do benefit the community, but again asserted that the Railroad received no special benefit from the improvements.

Mr. Eugene Weekes, a real estate appraiser retained by the Railroad, also stated that, in his opinion, there was no benefit to the Railroad's property and that if there was any commercial growth in Wilton, property other than that of the Railroad would be more desirable for such commercial growth. He stated that the improvements, in fact, would be a detriment to the Railroad, since better streets would assist the truck lines. He did admit, however, that the choice of shipping by truck or by rail would be determined by service, convenience, and cost, rather than by the condition of paved or unpaved streets.

Mr. Ted Sette, who was the fiscal agent for the City of Wilton, testified that after the total cost of the improvements had been certified to the special assessment commission, he, together with the members of the commission, examined all of the property within the improvement district. This group compiled a list of the property within the district which did not abut on the improvements, and made a determination that such property received no direct benefit from the project. He also testified that some of the property within the district abutted on the north-south streets and some abutted on the east-west streets. He further testified that the commission determined that most of the platted property

abutted on streets running east and west; that the benefit was determined to be equal, based on usable frontages, despite the fact that the depth of the lots varied from as little as 55 feet to as much as 140 feet, and the assessment was computed at the rate of $15.85 per front foot. There were variations made in the assessment of odd-shaped lots within the district. With regard to the Railroad's property, Sette testified that Dakota Avenue and County Road extended through the property, but the property also abuts or faces on Railway Street; and the special assessment commission determined that since it fronted on Railway Street, the Railroad's property should be assessed on the basis of its frontage on Railway Street because of its shape and size.

The special assessment commission further determined that the Railroad's property was situated similarly to other unplatted property and that it had similar usable areas. Sette further testified that the Washburn Estate property also fronted on Railway Street, just as the Railroad's property did, and that the Washburn Estate property was assessed in the same manner as was the Railroad property. Income of the various properties was not considered, nor was the market value before and after the improvement determined. No consideration was given to the fact that some of the lots were improved and some were not.

Sette further testified that, in his opinion, the commission found it would be more reasonable to expect a potential user of the Railroad's property to enter the property from Railway Street rather than from Dakota Avenue or County Road. He testified that the front-footage rule was applied to all lots of regular shape, to all unplatted properties if they faced the improvements, and the rule was modified where it produced inequities in the assessment of odd-shaped lots. The commission did consider the fact that there were no zoning restrictions in the City of Wilton and that the full usable areas of the lots could be used for any purpose. It was further determined that an unimproved lot was benefited to the same extent as an improved lot, and that both types of lots were benefited at the time the improvements were completed. Sette's opinion was that the assessments were spread to the best of the special assessment commission's ability, according to the benefits received, and as uniformly as possible. He also testified that the common method of assessment or special assessment is on a front-footage basis. Sette, on cross-examination, stated he was the fiscal agent and assessor for the City of Wilton in all matters pertaining to the assessment project; that his fee was set forth in his contract with the City; and that the bonds had not been sold because of this litigation.

Sette further testified that all lots were not benefited and that the lots that were benefited were equally benefited, based on the front-footage formula. He stated that the paved streets were beneficial to the property as follows: (1) that persons could drive on paved streets; (2) that the streets were beautified; (3) that there was control of storm and sewer waters; and (4) that paved streets resulted in greater cleanliness and less dust, with no rocks being thrown from passing vehicles upon the boulevard or lots. The benefits which he described were direct benefits to those properties which abutted on the pavement. Those lots which were not directly benefited and which received no special benefit were not assessed. Sette further stated that it was the best judgment and opinion of the assessment commission that the Railroad's lots faced on Railway Street. Their opinion was based on the fact that the Railroad had platted its property on an east-west basis fronting on Railway Street, because of the property's shape and size, and because of the fact that the lots on the east side of the track were platted in the same manner.

Sette, on further cross-examination, testified that consideration was given to the fact that the property was usable and im-

provable and that no special consideration was given to the special use made of the Railroad's property for railroad trackage. Sette indicated, on redirect examination, that it did not seem logical that anyone leasing the Railroad property would use Dakota Avenue in preference to access from Railway Street, and the commission was of the opinion that it was more reasonable to use Railway Street as an access to the Railroad's property.

The trial court, at the conclusion of the trial, issued a memorandum opinion stating that it found that the Railroad property did not derive a special benefit in addition to the general benefit enjoyed by the entire City, and therefore the court found that the special assessment commission had acted arbitrarily and that a new assessment must result. The trial court then remanded the case to the City of Wilton and the special assessment commission, and ordered that the City revise its assessment against the Railroad and that the Railroad property should be assessed on the same basis as the other property.

■ This language in the trial court's memorandum is conflicting, since the court first found that no benefit accrued to the Railroad and then remanded the case with an order to reassess the Railroad property. A careful review of the entire record fails to reveal that the evidence adducd by the Railroad was sufficient to support the trial court's findings and decision in this case. On the contrary, the record shows that there was substantial evidence to sustain the determination of the special assessment commission as confirmed by the governing body of the City of Wilton.

■ The great weight of authority is that a railroad right of way may be subjected to a special or local assessment even though such an assessment cannot be enforced by a sale of the property. 48 Am. Jur., Special or Local Assessments § 104, p. 653. See also 14 McQuillin, Municipal Corporations § 38.41, p. 140.

This court has also held that railroad property can properly be assessed for special improvements. Minneapolis, St. P. & S. S. M. Ry. Co. v. City of Minot, 51 N.D. 313, 199 N.W. 875, 37 A.L.R. 211 (1924); Northern Pac. Ry. Co. v. Richland County, 28 N.D. 172, 148 N.W. 545, L.R.A.1915A, 129 (1914).

The thrust of the Railroad's position is that its property received no benefit, and the appraisers testifying in its behalf stated that this conclusion was arrived at by an appraisal based on the value of the property before and after the improvements. This court once said, and it is equally applicable here, that:

"We are not inclined to hold with the appellants that the only measure of benefits is an increased selling price * * *." Northern Pac. Ry. Co. v. Richland County, *supra*, 148 N.W. at 547.

In regard to benefits from a special improvement, the United States Supreme Court has said:

"In determining whether an improvement does, or does not, benefit property within the assessment district, the land should be considered simply in its general relations and apart from its particular use at the time; and an assessment, otherwise legal, for grading, paving and curbing an adjoining street is not void under the Fourteenth Amendment because the lot is not benefited by the improvement owing to its present particular use." L. & N. R.R. Co. v. Barber Asphalt Co., 197 U.S. 430, 25 S.Ct. 466, 49 L.Ed. 819 (1905).

Section 40–23–07, N.D.C.C., sets out the statutory standards to which a special assessment must conform. It provides:

"Whenever the commission is required to make any special assessment under the provisions of this title, the members thereof personally shall inspect any and all lots and parcels of land which may be subject to such special assessment and shall determine from such inspection the

particular lots and parcels of land which, in the opinion of the commission, will be especially benefited by the construction of the work for which the assessment is to be made. The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as shall be necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment * * *."

In Northern Pacific Railway Co. v. City of Grand Forks, 73 N.W.2d 348, 351 (N.D. 1955), the court interpreted the statute as setting forth three requirements:

"The special benefit accruing to each lot or parcel of land from the improvement must be determined. The special assessment levied against each lot must be limited to its just proportion of the total cost of the improvement. The assessment against any lot or parcel of land must not exceed the benefit which has been determined to have accrued thereto."

The *Grand Forks* case dealt with a special assessment of property for the construction of a public parking lot. In that case, the class of improvement—a parking lot—provided some benefit to surrounding lots upon which a business was being or might be operated and therefore that case is based upon the principle that the benefits accruing to each business must be individually determined. The instant case is clearly distinguishable because the improvement for which the special assessments have been levied is not a parking lot, but is for paving streets and constructing curbs and gutters. In the case at bar the property owners are assessed because their property has received the benefit of the improvements.

■ The Railroad has urged that its property is devoted to the business of oper-

ating the Railroad and therefore it did not derive any benefits from the paving and other improvements of the street parallel to its property. In Chicago, R. I. & P. Ry. Co. v. City of Centerville, 172 Iowa 444, 153 N.W. 106, 108; 37 A.L.R. 256 (1915), the court, in answer to this contention, stated:

"The argument proceeds upon a mistaken conception of the effect of the statute which provides for assessments in proportion to benefits. It certainly does not mean that before such an assessment can be levied and enforced the city must be able to show that by reason of the paving the abutting property has been advanced in market value to the extent of the assessment, or point out in detail the specific way and manner in which the requisite benefits are to be realized in the future. Were such to be the rule, few, if any, schemes of local improvement at the expense of the property immediately affected could ever be accomplished. It is natural for the average property owner to resent the burden thus laid upon him, and he easily persuades himself that the thing for which he is asked to pay is a detriment, rather than a benefit, to his land, and ordinarily it is not difficult for him to find plenty of sympathizing neighbors who will unite in supporting his contention. Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement."

This court agrees with the above statement.

■ We have perused the entire record and conclude that the trial court was in error in finding and determining that the actions of the special assessment commission as confirmed by the governing body of

**84**

the City of Wilton were arbitrary and capricious, and in remanding the proceedings for reassessment to the City of Wilton. We find that there is substantial evidence to support the action of the special assessment commission as approved by the governing board of the City of Wilton with reference to the benefits received by the Railroad and the special assessments apportioned to its property. The Soo Line has failed to establish any ground for equitable relief from the assessments, and the judgment of the district court reversing the determination of the special assessment commission as confirmed by the City of Wilton is hereby reversed and the determination of the special assessment commission and the governing body of the City of Wilton is hereby affirmed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ, and KNUDSON, JJ., concur.