UNITED PUBLIC SCHOOL DIST. NO. 7, a municipal corporation, Plaintiff and Respondent,

v.

CITY OF BURLINGTON, North Dakota, a municipal corporation, et al., Defendants and Appellants.

Civ. No. 8765.

Supreme Court of North Dakota.

March 29, 1972.

Pringle & Herigstad, Minot, for defendants and appellants.

McGee, Van Sickle, Hankla, Backes & Wheeler, Minot, for plaintiff and respondent.

PAULSON, Judge.

This is an appeal from a judgment of the District Court of Ward County. The controversy arose out of an assessment made against the property of United Public School District No. 7, a public corporation [hereinafter School District] by a Special Assessment Commission [hereinafter Commission] created by the City of Burlington, North Dakota, a municipal corporation [hereinafter City]. The assessment district was duly created by the City pursuant to Chapter 40–22 of the North Dakota Century Code, for the purpose of funding the construction of a water and sewer system for the City. The Commission members were duly appointed pursuant to Chapter 40–23, N.D.C.C.

The initial assessment by the City against the School District was in the sum of $19,585.85. This assessment was altered by the Commission, pursuant to § 40–23–11, N.D.C.C., in the amount of $1,000.00, reducing the assessment to $18,585.85. This altered assessment was approved and confirmed by the City Council in conformance with § 40–23–16, N.D.C.C.

Pursuant to Chapter 40–26, N.D.C.C., the School District appealed to the district court, alleging that the assessment was excessive and disproportionate to the benefits received and that the assessment was made in an arbitrary manner and contrary to law. The School District further requested an injunction restraining the City from collecting the assessment. On October 8, 1969, the district court issued a memorandum opinion stating that the assessment was too high and appointing a Master to review the assessment and to make recommendations to the court as to appropriate adjustments.

On January 14, 1970, the district court entered a judgment in favor of the School District and approved a new assessment plan devised by the Master, which reduced the School District's assessment from $18,585.85 to $13,488.10. Thereafter, this appeal was taken.

The sole question to be determined on this appeal is whether the district court erred in substituting its judgment for that of the Commission.

Our decision in the case of Soo Line Railroad Company v. City of Wilton, 172 N.W.2d 74, 79 (N.D.1969), provides us with two principles of law which serve as guidelines for our decision in the case at bar:

"'Generally, all presumptions are in favor of the validity of assessments for local improvements and the burden is on persons attacking the validity of assessments to show that they are invalid.'" [Reed v. City of Langdon, 78 N.D. 991, 54 N.W.2d 148, 150 (1952), paragraph 4 of the syllabus.]

and

". . . this court is bound by the rule that when there is substantial evidence to support the decision of the special assessment commission, which is shown not to be invalid as a result of fraud or mistake, or by some defect in the proceeding which would render the special assessment invalid, the decision of the special assessment commission as confirmed by the city governing body must be affirmed." [Citing Williams Electric Coop., Inc. v. Montana-Dakota Util. Co., 79 N.W.2d 508 (N.D.1956); 63 C.J.S. Municipal Corporations § 1483, pp. 1274–1275; 63 C.J.S. (P.P.) Municipal Corporations § 1490, n. 57.]

The record reveals that the School District property is located on the southern edge of the City. The city limits cross the School District's property, so that part of the property is within the City and part is

outside of the City. The school building is partially within and partially outside the City. The School District property line within the City runs in a "staircase-type" fashion in relation to the city limits, and only part of such property line within the City fronts on a street.

Mr. Gene Opland, the president of the School District, testified that the assessment was made on four separate contiguous tracts owned by the School District. One of the tracts was used for a playground; one of the tracts was used as a parking lot; a portion of the school building was situated on another tract; and the remaining tract consisted of undeveloped prairie land, where school children occasionally played. Mr. Opland further testified that the School District encompasses three complete townships, the City of Des Lacs, and portions of six other townships, in addition to the City of Burlington. The School District asserts by virtue of this testimony that the Commission had no justifiable reason for assessing the School District at such a high rate and that this was an attempt to spread a disproportionate share of the cost of the water and sewer system against the taxpayers of the School District.

The total-front footage, as opposed to the street-front footage, of the School District property was assessed at the commercial rate of $15.85 per foot. The School District, through the testimony of Mr. Opland, compared the assessments made against each tract of its property with adjacent tracts. This evidence showed that the assessment of the School District tracts was in excess of the assessments of similar adjacent tracts. It is the School District's contention that its undeveloped prairie tract should have been assessed at the same rate as similar, adjacent nonschool property and also that its other tracts should have been assessed on a comparable basis with the nonschool tracts adjacent to them.

Mr. George Fick, the chairman of the Commission, testified that the School District property was assessed as a whole and that the assessment then was divided in proportion to the total-front footage of the four School District tracts. It is the City's contention that the School District tracts were necessarily assessed higher than the adjacent lots because the School District tracts were considered as a whole—considering the total benefits to the School District property—and that the benefits to the School District as a whole as determined by the Commission were considerably greater than the benefits accruing to the adjacent nonschool property.

Mr. Fick further testified that the members of the Commission talked to people who had served on special assessment commissions in other communities of similar size. He also testified that the Commission held several meetings and that the assessments were adjusted several times before the Commission made its final determination. He further testified that in his opinion the assessments made were fair and equitable.

As a result of the Commission members having discussed various methods of assessment with other persons who had served on similar commissions, it was determined that one of the methods used to assess schools was the four-member family unit method. This method is based on the premise that the average family size is four members; using this premise, the enrollment of a school is divided by four to determine the number of four-member family units in the school. The number of family units in the school is multiplied by the assessment made against the typical residential lot to determine the total school assessment. In the City of Burlington the assessment made against the typical residential lot was $400 (50 feet at $8 per foot).

The Commission employed the four-member family unit formula as a basis for two different assessment calculations. The first calculation was based on the 240-pupil capacity of the school, which number divided by four produced the quotient of 60 four-member family units. The Commis-

sion multiplied the 60 units by $400 and arrived at an assessment figure of $24,000, which figure was rejected as being too high. The second calculation was based on the 208-pupil actual enrollment of the school, which number divided by four produced the quotient of 52 four-member family units. The Commission multiplied the 52 units by $400 and arrived at an assessment figure of $20,800, which figure was also rejected as being too high.

Having rejected the two calculations discussed above, the Commission used another calculation in arriving at what it considered a fair and just assessment, which resulted in the initial assessment of $19,585.85 actually made against the School District property. This method involved multiplying the total-front footage of the School District property (slightly in excess of 1230 feet—the "staircase-type" front footage) by the commercial property rate of $15.85 per foot. It should be noted that typical commercial lots were assessed on the basis of street-front footage rather than total-front footage.

At the time that the Commission met to hear objections to its assessments, the School District appeared before the Commission to protest its assessment. The Commission, having learned that the actual construction costs would be $3,000 less than originally anticipated, reduced the School District assessment by $1,000 to the $18,585.85 figure approved by the City Council.

Having reviewed all of the evidence presented in this case, we are of the opinion that the Commission did not act arbitrarily, oppressively, or unreasonably and that there was substantial evidence to support and justify its determination. We find nothing in the record to show that the Commission placed a disproportionate share of the cost of the water and sewer system on the School District taxpayers. The School District has not sustained its burden of proof and, accordingly, we find that it was error for the district court to substitute its judgment for the judgment of the Commission. We take judicial notice of the fact that, in a city of 247 population, with little commercial activity and no industrial activity, the school—with its 208-pupil enrollment and its many activities which include inviting the attendance of the public—would be the greatest recipient of the benefits of a sewer and water system.

Our review of the testimony of Mr. Fick satisfies this court that the Commission understood its duty and exercised its judgment in a fair and just manner. We recognize that the School District property was assessed differently from the other property in the City and we find that this was justified. When the Commission made its calculations, based upon the four-member family unit method, it was convinced that these assessments would be too high. Accordingly, the Commission employed another method which resulted in an assessment figure which they considered fair to the School District.

This court is of the opinion that it is the total work product which was used in determining the final assessment which is important, rather than the exact method used in determining the assessment.

■ This court is cognizant of the argument advanced by the School District that the school is not in use for the twelve months of a year, but, rather, is in use for approximately nine months of a year. This argument would be tenable if the assessment were for usage of the system rather than for its initial construction. It cannot be argued, because of the fact that the school operates only nine months out of a year, that the City could build a smaller system at a reduced cost. The same capacity would be required by the school whether the system was in use for nine months or for twelve months a year.

The judgment of the district court reversing the determination of the Special Assessment Commission as confirmed by the City of Burlington is hereby reversed

and the determination of the Special Assessment Commission and the governing body of the City of Burlington is hereby affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.