**FARMERS UNION CENTRAL EXCHANGE, INC., Plaintiff and Appellant,**

v.

**GRAND FORKS COUNTY, a political subdivision, and the Special Assessment Commission of the City of Grand Forks, Fred Arnason, Chairman, Defendants and Appellees.**

Civ. No. 880345.

Supreme Court of North Dakota.

July 17, 1989.

Morley & Morley, Ltd., Grand Forks, for plaintiff and appellant; argued by Patrick R. Morley, Grand Forks.

Howard D. Swanson (argued), Sp. Asst. States Atty., Grand Forks, for defendants and appellees.

MESCHKE, Justice.

Farmers Union Central Exchange, Inc. ("Cenex") appealed a special assessment for street paving. The district court affirmed the assessment approved by the Grand Forks County Commission. We affirm, too.

When North 42nd Street was paved, a part of it lay outside the city limits of Grand Forks. Grand Forks County created a special improvement district for the paving of the street between Highway 2 and 27th Avenue North. The County delegated the initial determination of the assessments in this district to the Special Assessment Commission of the City of Grand Forks.

The Special Assessment Commission assessed a cost of $86,724.94 against Cenex's property in the district. After the County Commissioners confirmed this assessment, Cenex protested the assessment to the Commissioners pursuant to NDCC 40–23–14. During proceedings before the County Commissioners, through cooperation of participating agencies and municipalities, assessments against all properties in the district were reduced proportionately. The County Commissioners affirmed an assessment of $60,838.36 against Cenex's property.

Cenex sought review of its assessment in district court, complaining that the assessments were not uniform. Although separated from 42nd Street by 147 feet of right-of-way with four railroad tracks, Cenex's property was assessed on a "frontage" basis for all of its 1,077 feet parallel to 42nd Street. At the other end of the district, property of Indianhead Truck Line was assessed on a "sideage" basis for only one-third of the 470 feet of its property abutting on 42nd Street. *See* the illustration attached to this opinion.

After an evidentiary hearing, the district court determined that, while Cenex's principal course of access to 42nd was via 27th Avenue North, Cenex was considered to have additional access to 42nd directly across the railroad right-of-way for the entire length of its property parallel to 42nd, even if Cenex did not consider that "practical nor economical at the present time." The district court concluded that "[t]he property of Indianhead ... and the CENEX property are not comparable insofar as benefits are concerned" which "[t]he Special Assessment Commission took ... into account." Cenex's trucks had to traverse 42nd from 27th Avenue to reach Highway 2. Indianhead abutted Highway 2 and had direct access to it "without need to resort to North 42nd Street at all." From these circumstances, the district court concluded that "[o]bviously, there is a much greater benefit to CENEX than to Indianhead ... because of the paving project...." The district upheld the assessment on a "frontage" basis, ruling that benefits "were assessed on a uniform basis" and approving the "somewhat modified method of assessment ... utilized insofar as Indianhead was concerned in view of the unique location of the Indianhead property in relation to the improvement."

On appeal to this court, Cenex argued that the County erred in assessing its prop-

erty on the basis of front footage when it did not actually "front" on the paved street because of the intervening railroad right-of-way. Since its property had no actual frontage on 42nd Street, Cenex argued, the assessment was arbitrary, capricious, and unreasonable. Cenex insisted that "[t]he front footage method can only be used in cases where benefits conferred upon the assessed property are equal and uniform." To make assessments uniform, Cenex argued, its property must be assessed on a sideage basis like Indianhead's. We disagree.

■ Although this improvement was made by a county, North Dakota Century Code directions for improvements and special assessments by municipalities apply. NDCC 11-11-55.1.[1] The municipal statutes direct courts to review the levy and apportionment of any special assessment for local improvements. NDCC 40-26-01. When an assessment is voided for not complying with law, "[t]he court shall determine the true and just amount which any property attempted to be specially assessed for a special improvement should pay to make the same uniform with other special assessments for the same purpose." NDCC 40-26-07. Our review must determine whether the County followed the statutory direction to "assess against each ... parcel[ ] ... such sum, not exceeding the benefits, as shall be necessary to pay its *just proportion* of the ... cost of such work, ... which is to be paid by special assessment, ..." (Our emphasis). NDCC 40-23-07.

In *Soo Line Railroad Company v. City of Wilton,* 172 N.W.2d 74 (N.D.1969), this court considered an argument about uneven application of a "front-footage" mode of assessing costs of curb, gutter and paving improvements. Wilton's special assessment commission generally assessed the property in the district on the basis of frontage on east-west streets. However, the railroad's property was assessed on the basis of its frontage on north-south streets. Wilton's fiscal agent testified that the front-footage rule was applied to all lots of regular shape and to all unplatted properties (like the railroad's) if they faced the improvements, but was modified "where it produced inequities." Although the railroad's witnesses testified that the improvements gave little or no benefit to the railroad's property, Wilton's fiscal agent and assessor testified "that the assessments were spread to the best of the special assessment commission's ability, according to the benefits received and as uniformly as possible." 172 N.W.2d, at 81. This court concluded that there was "substantial evidence to support the action of the special assessment commission as approved by the governing board of the City of Wilton with reference to the benefits received by the Railroad and the special assessments apportioned to its property." 172 N.W.2d, at 84. Accordingly, this court ruled that the railroad had not established any ground for equitable relief from the assessments. The decision reversed the district court's action invalidating Wilton's assessment against the railroad's property.

■ In this case, all of the witnesses agreed that Cenex's property benefited from the paving project. Although nearly all of the witnesses testified that the assessment against Cenex's property was excessive, there was also evidence that the paving benefited the property of Cenex more than the property of Indianhead. A principal function of North 42nd Street was

---

**1.** When this special improvement district was created, NDCC 11-11-55.1 said:

"*Petition for improvements—Levy of special assessments.* The board of county commissioners of any county, upon receipt of a petition of sixty percent of the landowners in a defined area, outside of the limits of any incorporated city, may install the petitioned improvements as benefit the defined area, provide for the financing of the improvements, and levy special assessments for the

payment of all or part of the improvements within the defined area. In providing for the improvements, the county shall have the authority granted to municipalities in chapters 40-22, 40-23, 40-23.1, 40-24, 40-25, 40-26, and 40-27, and the county shall comply with the provisions of those chapters in making the improvements. Whenever action is required of city officials in those chapters, the comparable county officials shall take the action."

access to Highway 2. Indianhead's property was located at the junction of 42nd and Highway 2 and had direct access to the Highway without need to resort to 42nd. On the other hand, Cenex's property was located at the farthest point away from 42nd's intersection with Highway 2 with more potential use of 42nd Street. *See* the illustration attached to this opinion. In this respect, the benefit to the properties of Indianhead and Cenex was different. The special assessment commission took this difference in benefits into account. The evidence supports the difference.

Citing *Northern Pacific Railway Co. v. City of Grand Forks*, 73 N.W.2d 348 (N.D. 1955), Cenex argued further that the front-footage method could only be used where "benefits" to assessed property were equal and uniform. Since it had no actual front footage, Cenex argued that it was arbitrary to apply the front-footage method in this district. But we cannot determine, as a matter of fact, that Cenex had no "frontage" on 42nd Street. The County treated the entire length of Cenex's property as having direct access to 42nd Street across the railroad right-of-way since it was "potential" even though not presently used. From the evidence, the district court concluded that was reasonable. So do we.

In *Northern Pacific, supra,* this court declared that a "foot frontage method" "cannot apply to a special assessment [against surrounding property] for a parking lot." 73 N.W.2d, at 352. This court reasoned that benefits from a parking lot are "proportionate to need that the business conducted thereon has for a parking lot." *Id.* This court ruled that the use of the foot frontage method for a neighborhood parking lot resulted in assessing more than a just proportion to the railroad's property. But we do not read *Northern Pacific* as condemning use of the front-foot method for all paving improvements, particularly when the method is adjusted to take into account variations in benefits to different properties.

Quoting 14 McQuillin *Mun. Corp.* (3rd ed. rev. 1970), we recognized in *Cloverdale Foods Co. v. City of Mandan*, 364 N.W.2d 56, 61 (N.D.1985):

" '... Where no rule of apportionment is prescribed by statute or charter, the municipality may adopt "any mode that would be fair and legal" and such as would secure an assessment in proportion to the benefits accruing as nearly as practicable. "Absolute equality is not to be expected." ...' "

And, more recently, we said:

"[T]he process of quantifying benefits accruing to each lot inevitably rests on the judgment and discretion of the special assessment commission. There simply is no precise formula for quantifying benefits." *Haman v. City of Surrey*, 418 N.W.2d 605, 608 (N.D.1988).

The statutory directive is "just proportion," not absolute uniformity.

We see no reason why the front-footage method cannot be used for assessing the costs of paving streets, particularly when the method is modified as necessary to maintain a fair proportion among the properties benefited by the project. In this case, the front-footage method was modified to adjust for relative differences in benefit from paving North 42nd Street.

The judicial function is to assure that local taxing authorities do not act arbitrarily, capriciously or unreasonably. Courts should not reweigh the evidence considered by the local governing body. *Haman v. City of Surrey, supra; Ulvedal v. Board of County Commissioners*, 434 N.W.2d 707 (N.D.1989).[2] We conclude that the assessment against Cenex's property for paving North 42nd Street was not arbitrary, capricious, or unreasonable. Therefore, as the district court did, we affirm the decision of the Grand Forks County Commission.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

2. When the state constitution guarantees "equal and uniform" taxation, gross disparities in the tax-assessed value of generally comparable real estate violate the equal protection of the laws guaranteed by the Fourteenth Amendment. *Allegheny Pittsburgh Coal Company v. County Commission of Webster County,* — U.S. —, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). *See also,*

APPENDIX
ILLUSTRATION
(Not to Scale)

*Soo Line Railroad Co. v. State,* 286 N.W.2d 459